**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCEL K. CHAMBERS,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 4:22-CV-453-PLC** |
| | **)** | |
| | **)** | |
| **QUINTIN WINDHAM,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Quintin Windham's motion for summary judgment. [ECF No. 50]. Plaintiff Vincel Chambers, an inmate housed at the Buzz Westfall Justice Center in St. Louis County (the "Jail"), filed a *pro se* complaint against Defendant, in his individual capacity,[1] seeking monetary relief under 42 U.S.C. §1983 for Defendant's alleged violation of Plaintiff's constitutional rights. [ECF No. 13] Specifically, Plaintiff claims Defendant: (1) solicited another inmate to commit violence against Plaintiff, (2) deprived Plaintiff of his medications to treat to his mental health conditions, and (3) denied Plaintiff access to a mental health professional. [ECF No. 13]

Defendant denies the allegations and moves for summary judgment arguing that: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff failed to establish a prima facie case for liability; (3) Defendant is entitled to qualified immunity; and (4) Plaintiff has not endorsed

---

[1] In addition, Plaintiff sued Defendant in his official capacity. [ECF No. 13] The Court dismissed Plaintiff's official capacity claims because Plaintiff alleged Defendant was an employee of the St. Louis County Jail, which "is not a distinctly suable entity under 42 U.S.C. § 1983[,]" and even if St. Louis County was substituted as Defendant's employer, Plaintiff failed to allege that St. Louis County had an unconstitutional policy or custom rendering it liable for the alleged violation of Plaintiff's constitutional rights. [ECF No. 14]

an expert witness and therefore cannot support his claim for damages. [ECF Nos. 40 & 50] Plaintiff counters that there are genuine issues of material facts to be resolved. [ECF No. 63] With respect to Defendant's exhaustion defense, Plaintiff contends that the Jail's grievance process was unavailable to him because: (1) the Jail's grievance procedure did not apply to his claims, (2) he was denied the opportunity to file a grievance, and (3) he did not file a grievance for fear of retaliation.  [ECF No. 13, 62 & 63]

## I. Background

Plaintiff is a pretrial detainee in the custody of St. Louis County's Department of Justice Services (the "Department") at the Jail. [ECF No. 13, p. 2; 52, ¶ 4]  Defendant is employed as a corrections officer at the Jail. [ECF No. 13, p. 2; 51-1, Ex. F, ¶ 1; 52]

### A. Plaintiff's Deposition Testimony

At his deposition, Plaintiff testified to the alleged events that form the basis of his claims. [ECF No. 55]  On November 1, 2021, sometime between 7:00 and 9:00 p.m., Plaintiff was in the "dayroom" for recreation time with the other inmates from his "pod." [Id. at 24-26, 41] The medical staff were also in the dayroom for the evening "med pass" and the inmates formed a line to receive their evening medications. [Id. at 30-31] Plaintiff was sitting at a table waiting for the line to shorten when Defendant ordered Plaintiff to "lock down" or return to his cell. [Id. at 24-31] After returning to his cell and closing the door, Plaintiff pressed the cell's intercom button, enabling him to communicate with the corrections officer in the pod's officer's podium. [Id. at 29-31]  Plaintiff advised Defendant that Plaintiff needed to take his medications[2] but Defendant "ignored him." [Id. at 31, 40]  The other corrections officer assigned to the pod was not in the podium at that time. [Id. at 31-32]

---

[2] Plaintiff takes medications to treat high blood pressure and several mental health conditions, including schizophrenia, multiple personality disorder, and manic depression. [Id. at 32-33]

2

After being denied his medications, Plaintiff became "real depressed." [Id. at 39] Plaintiff pressed the intercom button again and told Defendant that he was feeling suicidal. [Id. at 39] Plaintiff stated Defendant "told me just kill myself" and that he "wasn't going to do anything about it." [Id. at 40]  Plaintiff did not recall if the other corrections officer was at the podium during the second call. [Id. at 40-42]  Plaintiff stated that "[n]ormally…if you have a problem with an officer you talk to a lieutenant."  [Id. at 61]  Defendant told Plaintiff he could talk to a lieutenant but that the lieutenant "wasn't going to listen to [him.]" [Id. at  61] Plaintiff decided not to talk to Defendant's lieutenant because "it wouldn't have went nowhere." [Id. at  61]

That night, Plaintiff awoke to his cellmate, Sean Kirkman, attacking him. [Id. at 50] Kirkman was "leaning over" Plaintiff's bunk, punching him. [Id. at 50] Plaintiff pushed Kirkman away and the men "argued for a minute" before they went back to bed. [Id. at 51]  Plaintiff did not push the emergency button after the attack because he was afraid of being labeled a "snitch."  [Id. at 52]  Plaintiff chose not to submit a "sick call form" or seek medical attention for his injuries because he did not want to be moved out the pod and "out of fear of retaliation" from "[a]ny [corrections officer] or any inmate." [Id. at  53, 64-65]  Plaintiff stated that two or three days later, Kirkman advised Plaintiff that Defendant told Kirkman that he should attack Plaintiff because Plaintiff was in jail for a "sex case[.]" [Id. at 56] Kirkman said he attacked Plaintiff because he was "mad" and "acting off his rage[.]" [Id. at 56-57]

Plaintiff asserted he told his case manager, Nate Hayward,[3] that Defendant denied Plaintiff access to his medications and to a mental health professional a couple of days after the incident

---

[3] In November 2021, Hayward served as a case manager for the Department and he was Plaintiff's assigned case manager.  [ECF No. 51-1, Ex. E] In that position, Hayward was responsible for assessing an inmate's classification status and determining program eligibility, providing pre-release counseling, and facilitating inmate complaints and grievances. [Id.] He currently serves as the Department's Deputy Director. [Id.]

3

occurred. [Id. at 43-45] Hayward responded that "he would look into it and take care of it."  [Id. at 43-44]  Plaintiff did not follow up with Hayward and did not "know if anything ever came of" his report. [Id. at 44-45, 47, 73] After speaking with Hayward, Plaintiff "didn't want to press the issue anymore" and "just left it alone." [Id. at 45]   Plaintiff did not advise any other jail or medical staff that Defendant denied Plaintiff access to his medications and a mental health care professional.   [Id. at 44-45, 47] Plaintiff could not remember if he reported Kirkman's attack to Hayward but admitted that he did not inform any medical or jail staff that Defendant allegedly directed Kirkman to attack him. [Id. at  63-64]

Prior to these incidents, Plaintiff had seen a grievance form but was "[n]ot too familiar" with the process of filing a grievance. [Id. at 68-70]   Plaintiff had never filed a grievance and did not ask anyone how to file one or if he should file one with respect to these incidents. [Id. at 68-69] Plaintiff initially stated that he did not file a grievance because he thought grievances were for "missing property and stuff like that" and he did not "think a grievance would have covered" an assault and the denial of medications and mental health services. [Id. at 68-69]

Plaintiff, however, also asserted that he "[tried] to file a grievance but I didn't go through with it." [Id. at 69] Plaintiff claimed that he asked a corrections officer for a grievance form but that he could not remember "when or who" he asked. [Id. at 69] Plaintiff said the corrections officer "told me that they was (sic) going to give me one but they never gave it to [him]." [Id. at 70] Plaintiff did not follow up with the corrections officer to whom he issued the request or with any other corrections officer. [Id. at 71]  Plaintiff explained that he alleged in his second amended complaint that his grievance was "denied at time [of] claim" because the corrections officer never gave him the grievance form. [Id. at 70]

B. Defendant's Statement of Undisputed Material Facts and "Reply to Plaintiff's

Response and Objections to Defendant's Statement of Undisputed Material Facts"[4]

Defendant was not assigned to and did not work at the Jail on November 1, 2021. [ECF No. 65, p. 3; 65-1, Ex. I, ¶ 3; K]   Defendant denies preventing Plaintiff from receiving his prescribed medications or accessing a mental health professional. [ECF No. 52, ¶ 22; 51-1, Ex. F. ¶ 7, 65-1, ¶¶ 11-12] Defendant further denies sharing information about Plaintiff's pending charges or soliciting Kirkman or any other inmate to assault Plaintiff. [ECF Nos. 52, ¶ 24; 51-1, Ex. F. ¶ 8; 65-1, ¶¶ 7-9;  65-1, ¶ 7-9]

Tricia Rodgers, the Department's Corrections Compliance Supervisor, has access to inmate grievances and disciplinary records. [ECF No. 51-1, Ex. D (declaration of Tricia Rodgers) ¶¶ 2-3] Rodgers reviewed the Jail's Integrated Jail Management System and found no record of Plaintiff filing a grievance while in the custody of the Department. [ECF No. 52, ¶ 12; 51-1, Ex. D, ¶ 4] Further, Hayward has no independent recollection of or any notes reflecting that Plaintiff: (1) informed Hayward that Defendant prevented Plaintiff from receiving his prescribed medications and psychiatric treatment, or encouraged another inmate to assault Plaintiff; or (2) discussed filing a grievance. [ECF No. 51-1, Ex. E (declaration of Nate Hayward) ¶¶ 5-7]

C.  Plaintiff's Section 1983 Claims

---

[4] Defendant filed a Statement of Undisputed Material Facts in support of his motion for summary judgment. [ECF No. 52] Plaintiff included a Statement of Material Facts with his response to the motion. [ECF Nos. 62, 63] In his reply, Defendant included a "Reply to Plaintiff's Response and Objections to Defendant's Statement of Undisputed Material Facts." [ECF No. 65]  Defendant's "Reply" included a "Supplemental Declaration" by Defendant, as well as other documentary evidence. [ECF No. 65-1 to 65-3]

Notably, Plaintiff alleged in his second amended complaint and during his deposition that the incidents occurred on November 1, 2021. [ECF Nos, 13, 55]  Defendant's motion for summary judgment, however, proceeded as if the events were alleged to have occurred on November 21, 2021. [ECF Nos. 50-52] Thus, some of Defendant's factual allegations and denials regarding the incidents were directed to the wrong date and, therefore, irrelevant to Plaintiff's claims.  [ECF Nos. 50-52] In his response, Plaintiff raised Defendant's mistake, reasserting that the incidents occurred on November 1, 2021. [ECF Nos. 62 & 63] In his reply, Defendant acknowledged the mistake and responded to the factual allegations in Plaintiff's Statement of Material Facts with supplemental evidence related to November 1, 2021. [ECF No. 64 & 65]

Plaintiff filed his section 1983 complaint in April 2022. [ECF No. 1] In his second amended *pro se* complaint, Plaintiff alleges Defendant, in his individual capacity, violated Plaintiff's constitutional rights by: (1) soliciting violence against him by "revealing details about [his] sex case" and directing Kirkman to harm Plaintiff; (2) depriving Plaintiff of his medications to treat his mental health conditions, and (3) denying Plaintiff access to a mental health professional. [ECF No. 13] Defendant denies Plaintiff's allegations and moves for summary judgment on all of Plaintiff's claims.

## II.      Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." Id. at 324 (quotation marks omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting

<u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)).

### III.   Discussion

Defendant claims he is entitled to summary judgment because Plaintiff failed to exhaust

his administrative remedies in the absence of a formal grievance with the Jail on the alleged

incidents. [5] [ECF Nos. 50 & 51] More specifically, Defendant argues that, at most, Plaintiff

invoked the Jail's informal grievance process by advising Hayward about some of the incidents

but that Plaintiff's failure to follow up with Hayward or other staff member to file a formal

grievance precludes this Court's review.  [ECF Nos, 51, 52, 64]  Defendant also contends that

Plaintiff's assertion that he was afraid of retaliation "is contradictory to his subsequent filing of a

lawsuit, which is arguably of greater consequence than filing a grievance." [ECF No. 64]

In response, Plaintiff essentially argues that the Jail's grievance process was unavailable to

him. [ECF No. 62 & 63] Plaintiff alternatively asserts that: (1) the Jail's grievance procedure did

not apply to his claims, (2) that he was denied the opportunity to file a grievance, and (3) he did

not file a grievance for fear of retaliation. [ECF No. 13, 62 & 63]

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner may not bring an action

under section 1983 "until such administrative remedies as are available are exhausted." 47 U.S.C.

§ 1997e(a).  The purpose of the PLRA's exhaustion requirement is to afford corrections officials

"the time and opportunity to address complaints internally before allowing the initiation of a

federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516,

---

[5] Defendant further contends he is entitled to summary judgment because: (1) Plaintiff failed to establish a prima facie case of liability; (2) Defendant is entitled to qualified immunity; and (3) Plaintiff has not endorsed an expert witness and therefore cannot support his claim for damages. [ECF Nos. 40, 50, 64]. Because the Court finds that Plaintiff's claims must be dismissed for failing to exhaust his administrative remedies, the Court does not address Defendant's remaining arguments.

525 (2002)). The exhaustion requirement is mandatory. Muhammad v. Mayfield, 933 F.3d 993, 1000 (8th Cir. 2019). If the Court determines that claims are unexhausted, they must be dismissed without prejudice. Barbee v. Corr. Med. Servs., 394 F. App'x 337, 338 (8th Cir. 2010) (citing Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). However, "[n]onexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015) (citing Jones, 549 U.S. at 211-12).

"Exhaustion" under section 1997e(a) means "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (emphasis in original). An inmate exhausts his administrative remedies by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits." Burns v. Eaton, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting Hammett, 681 F.3d at 947-48)).

"An inmate…must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016). "The Supreme Court recognizes at least three circumstances where an administrative remedy is 'not capable of use' and thus unavailable: (1) where 'it operates as a simple dead end—with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates,'…; (2) where the 'administrative scheme' is 'so opaque' as to be practically 'incapable of use,'…; and (3) where 'administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Muhammad, 933 F.3d 993, 1000 (emphasis added) quoting Ross, 578 U.S. at 642-44. The third exception includes instances when prison officials misled or threaten inmates or "devise procedural systems" to impede the filing of inmate claims. Ross, 578 U.S. at 644.

According to the Department's Policy and Procedures, Number 1802 ("Policy and Procedures") "[a]ll inmates have the right to register a complaint regarding treatment, incidents, medical care, administrative policies and procedures or other legitimate concerns." [ECF No. 51-1, p. 2]  Inmates are "encouraged" to use the Department's "Informal Grievance Procedure" prior to initiating the "Formal Grievance Procedure." [ECF No. 51-1, p.1-2] The informal grievance procedure  "allows an inmate to verbally or in writing, express a problem or concern to a staff member." [ECF No. 51-1, p. 1] Under the informal process, "inmates should discuss the problem with his/her Housing Unit Officer or staff member responsible in the particular area of the problem." [ECF No. 51-1, p. 2]

After exhausting efforts at informally resolving the grievance, the inmate initiates the formal grievance procedure by requesting an "Inmate Grievance Form" from the inmate's case manager or a "Housing Unit Officer." [ECF No. 51-1, p. 2] The inmate shall include specific details of the grievance, including the date, time, location of the incident, and what informal actions were taken to resolve the grievance. [ECF No. 51-1, p.3]  Upon completion, the inmate shall submit the grievance form to his case manager, a Housing Unit Officer, or to his "Housing Unit Supervisor."[6] [ECF No. 51-1, p.3]  Upon receipt, the inmate's case manager, housing unit officer or housing unit supervisor shall either "handle the grievance informally" or, if this is not possible, forward the grievance to the "Housing Unit Manager." [ECF No. 51-1, p.3]  If the grievance "concerns issues in another area (i.e. medical, kitchen, commissary, etc.)" the Housing Unit Manager forwards the grievance to the department manager for that area. [ECF No. 51-1, p. 4]

---

[6] While Section IV(C)(f) of the Policy and Procedures state that the inmate shall submit the grievance to either his case manager or the Housing Unit Supervisor, Sections IV(D)(a)-(b) contemplate that a Housing Unit Officer can also accept a formal grievance for processing. [ECF No. 51-1, p. 2-3]

The inmate's grievance is then investigated by either the Housing Unit Manager or other department manager and a written response is provided to the inmate within 5 days. [ECF No. 51-1, p. 3-4]   The inmate has three days to appeal the response. [ECF No. 51-1, p.4]   The appeal is reviewed by either the Housing Unit Manager, or one of his or her designees, or if the Housing Unit Manger handled the initial investigation, to the "Director" or one of his or her designees. [ECF No. 51-1, p. 5]

While there is conflicting evidence regarding whether Plaintiff filed an informal grievance on his claims that Defendant denied Plaintiff access to his medications and a mental health professional,[7] there is no dispute that Plaintiff did not file a formal grievance with respect to these claims or his claim that Defendant directed Plaintiff's cellmate to physical harm him. Thus, Plaintiff did not complete the Jail's grievance process.[8]

Plaintiff does not deny these underlying facts but instead, essentially, argues that the Jail's grievance process was unavailable to him. [ECF No. 62 & 63]   Plaintiff alternatively asserts that: (1) the Jail's grievance procedure did not apply to his claims, (2) that he was denied the opportunity to file a grievance, and (3) he did not file a grievance for fear of retaliation.  [ECF No. 13, 62 & 63]

A.  Plaintiff's Claims Are Covered by the Department's Policy and Procedures

---

[7] Plaintiff testified during his deposition that he reported to Hayward that Defendant denied Plaintiff access to his medications and to a mental health professional. [ECF No. 55 at 43-45] However, Plaintiff could not remember if he told Hayward about Kirkman's attack and affirmatively stated that he did not inform any staff that the attack was perpetrated at Defendant's direction. [Id. at 63-64] In support of his motion for summary judgment, Defendant attached Hayward's declaration stating he had no independent recollection or any notes reflecting that Plaintiff informed him of these events. [ECF No. 51-1, Ex. E]
[8] Because Plaintiff did not file a formal grievance, he could not exhaust the grievance process by appealing any adverse initial decision on his formal grievance.

Plaintiff alleged in his second amended complaint that he did not file a grievance because the Jail's grievance procedures either did not apply to his claim or he did not know if the grievance procedure applied to his claim. [ECF No. 13] During his deposition, Plaintiff explained that he did not think the grievance process covered the assault and the denial of medications and mental health treatment because he thought the process covered "missing property or stuff like that[.]" [ECF No. 55, p. 68-69]

The Policy and Procedures, however, state that they cover complaints "regarding treatment, incidents, medical care, administrative policies and procedures and other legitimate concerns." [ECF No. 51-1, p. 2] The denial of prescribed medications and mental health treatment would fall under the specific category of medical care but also under the more general categories of "treatment," "incidents," and "other legitimate concerns." Further, the general categories of "treatment," "incidents," and "other legitimate concerns" would encompass claims that a corrections officer solicited violence against an inmate.

Here, the plain language of the Policy and Procedures demonstrates that Plaintiff's claims were covered by the policy. Plaintiff provides no authority supporting a finding that the Jail's Policy and Procedures did not cover his claims. Instead, Plaintiff asserts only that he did not know that his claims were covered. However, a petitioner's belief that "the grievance procedure might have been futile or perhaps may not have been an effective remedy in his case does not excuse his failure to use it." Watson v. Witty, No. 2:16CV71 HEA, 2019 WL 118556, at *3 (E.D. Mo. Jan. 7, 2019). See also Porter v. Sturm, 781 F. 3d 448, 451 (8th Cir. 2015) (inmate must exhaust his administrative remedies even if he "subjectively believed that there was no point in his pursuing administrative remedies.") (quotations omitted)). Plaintiff acknowledges that he did not ask anyone if he should file a grievance and that he did not file a formal grievance under the policy

11

despite his uncertainty as to its applicability. Based on the foregoing, the Court finds that Plaintiff's claims were covered by the Jail's Policy and Procedures.

B. Jail Administration Did Not Thwart Plaintiff From Taking Advantage of the Grievance Process

As already noted, an administrative remedy is unavailable when "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Muhammad, 933 F.3d 993, 1000, quoting Ross, 578 U.S. at 642-44. Under this exception, an administrative remedy is unavailable to an inmate when prison officials misled or threaten inmates or "devise procedural systems" to impede the filing of inmate claims, Ross, 578 U.S. at 644.

1. Opportunity to File a Grievance

Plaintiff contends that he was denied the opportunity to file a grievance, stating that "it's a known practice to [deny] inmates grievance forms because there is no policy, procedure or right to file a grievance under any state laws[.]" [ECF No. 62 & 63 ] In his second amended complaint, Plaintiff asserted that his grievance was "denied at time [of] claim." [ECF No. 13] Plaintiff explained during his deposition that this allegation is based upon the fact that he requested a grievance form from an unidentified corrections officer but never received the form. [ECF No. 55 at 70] However, a lone, unidentified corrections officer failing to provide a grievance form after a single request, without more, does not establish that Plaintiff was denied the opportunity to file a grievance.

Plaintiff admitted that he did not follow up on his request with the corrections officer and did not make a similar request to any other officer. [ECF No. 55 at 71] Instead, Plaintiff testified that he "didn't go through with" filing the grievance after failing to receive the form after his initial request. [Id. at 69] This explanation was consistent with Plaintiff's testimony that he did not follow

12

up with Hayward or any other staff member after reporting some of the incidents to Hayward because he "didn't want to press the issue anymore" and decided to "just [leave] it alone." [ECF No. 55 at 44-45, 47] Here, the evidence before the Court does not prove that Jail staff systematically denied inmates grievance forms but instead demonstrates that Plaintiff chose not to pursue the filing of a formal grievance.

     2.  Fear of Retaliation

Plaintiff also argues that he did not file a formal grievance because he was "scared" to report the incidents and feared for his safety.  [ECF No. 62; 63; 55 at 46-47, 67] Plaintiff does not state the source of his fear in any of his pleadings. [ECF No. 13, 62 & 63] At one point during his deposition, Plaintiff stated that he did not seek medical attention after Kirkman's attack "out of fear of retaliation" from "[a]nybody, any [corrections officer] or any inmate." [ECF No. 55 at 64-65] However, Plaintiff also testified that he did not seek medical attention or tell anyone about the attack because he "didn't want them to know that we was fighting… because [Plaintiff] would have [been] moved out the pod." [ECF No. 55 at  53] Plaintiff further stated that he did not seek assistance during the attack or tell anyone about the attack because he was "scared of being labeled a snitch[.]" [ECF No. 55 at 52]

Although Plaintiff cited a general fear of retaliation from "[a]nybody[,]" including corrections officers, for reporting the Kirkman incident, there is no evidence supporting a finding that the Jail's grievance process was unavailable to Plaintiff due to the Jail administration's intimidation of inmates. See Ross, 578 U.S. at 644.  Furthermore, the evidence demonstrates that Plaintiff chose not to file a grievance because he was equally concerned about retaliation from other inmates and the possibility of being transferred from his pod.

13

The Court finds that the record establishes that the Jail's grievance procedures covered Plaintiff's claims and were available to Plaintiff. Plaintiff does not dispute that he did not file a formal grievance with respect to his claims. As a result, Plaintiff's section 1983 claims must be dismissed without prejudice for failing to properly grieve these issues before filing suit in this Court.  See, e.g., Human v. Hurley, 2:17-CV-8-ERW, 2018 WL 1519376, at *4 (E.D. Mo. March 28, 2018); Barbee, 394 F. App'x 337; Porter, 781 F.3d at 452-53 (affirming district court's dismissal without prejudice of claims for failure to exhaust administrative remedies and vacating district court's grant of summary judgment).

**IV.    Conclusion**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [ECF No. 50] is **GRANTED**. Plaintiff's second amended complaint is **DISMISSED without prejudice** for failing to exhaust his administrative remedies.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of January, 2024

14